**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jerry Lee OLESEN, Defendant and Appellant.**

**No. 16426.**

Supreme Court of South Dakota.

Considered on Briefs March 24, 1989.

Decided July 19, 1989.

Roger A. Tellinghuisen, Atty. Gen., Pierre, Ann C. Meyer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

John A. Shaeffer of Shaeffer Law Office, Flandreau, for defendant and appellant.

WUEST, Chief Justice.

Jerry Lee Olesen appeals from judgments of conviction for second degree rape, sexual contact with a child under the age of 16, and third degree rape. We affirm.

### FACTS

In October and December of 1979, Olesen had sexual intercourse with his 14 year old daughter Lisa. Then in May of 1985, Lisa saw Olesen molesting her younger sisters, Liza and Alta, by rubbing their vaginas with his fingers. Liza was five years old and Alta was three years old at the time.

Olesen was indicted by a Haakon County grand jury on two counts of second degree rape, two counts of sexual contact with a child under the age of 16, one count of third degree rape, and one count of tampering with a witness. During the trial a doctor testified as to the statements given

to him by five year old Liza during a medical examination. This examination occurred about eight months after Olesen allegedly molested Liza. Defense counsel objected to the doctor's testimony since it was hearsay, but the objections were overruled by the trial court. The doctor also testified that during the examination he found an injury to Liza's hymenal ring and a larger than normal vaginal opening. He concluded that sexual abuse had occurred.

The jury found Olesen guilty on all counts except the one count of tampering with a witness. The trial court sentenced Olesen to five consecutive three year terms in the penitentiary.

### ISSUE

Did the trial court abuse its discretion by allowing the doctor to testify about the statements given to him by five year old Liza during a medical examination?

### DECISION

SDCL 19-16-8 (Rule 803(4)) contains an exception to the hearsay rule for statements given to aid medical diagnosis and treatment:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof are not excluded by § 19-16-4 in so far as reasonably pertinent to diagnosis or treatment, even though the declarant is available as a witness.

Olesen argues that there is no possible diagnosis or treatment that could have been performed on the child eight months after the incident of touching her vagina. He contends that the examination was done for the purpose of obtaining evidence for the state, rather than for any diagnosis or treatment. Consequently, he concludes that the statements made by Liza should not have been admitted under SDCL 19-16-8.

When reviewing the admission of evidence, this court will not disturb the decision of the trial court unless there is a clear showing of an abuse of discretion. *State v. Bawdon*, 386 N.W.2d 484 (S.D.1986). A doctor's testimony concerning a child's statements during a medical examination is admissible under SDCL 19-16-8 when the statements were primarily concerned with what happened to the child, rather than who committed the assault. *Id.; State v. Garza*, 337 N.W.2d 823 (S.D.1983). *See also United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

Here, the doctor testified as follows:

> I asked her [Liza] if she had ever been hurt around her bottom, and she replied that her daddy had hurt her. I then asked her where and she pointed to the vaginal area. I then asked if someone had, if her father had put his fingers in her and she nodded affirmatively. I then asked if it hurt and she again indicated affirmatively that it had hurt. I then asked her if she knew what a male organ was, what a penis was, and she indicated she knew the difference between female and male and nodded that she knew what the male organ was. I think I referred to it as a male thing. She indicated she knew where that was located. I asked her if she had, if he had placed that in her and she indicated affirmatively again. I went back through the questions a number of times to see that she didn't change her indications. She did not elaborate in detail, it was just, she did say that she had been hurt and when asked about the area, indicated that her vaginal area and nodded as I asked the questions.

A careful analysis of this testimony reveals that the doctor's questions were primarily directed toward the existence and location of any pain suffered by the child, and not with the identity of the alleged molester. Likewise, the child's answers emphasized what happened to her and were primarily concerned with "the inception or general character of the cause or external source" of the pain, which is clearly admissible under SDCL 19-16-8 and our prior case law. Therefore, we conclude that the

trial court did not abuse its discretion by allowing the doctor's testimony.

Olesen's argument that diagnosis and treatment of Liza could not have been performed after a lapse of eight months is totally without merit, since the doctor found physical injury to Liza even after the eight month lapse. Furthermore, this court has recently upheld testimony of a doctor pursuant to SDCL 19–16–8 despite a lapse of two years from the date of the alleged child abuse to the date of the medical examination. *Matter of S.W.*, 428 N.W.2d 521 (S.D.1988).

Affirmed.

MORGAN, J., concurs.

HENDERSON, J., concurs specially.

MILLER, J., concurs in result.

SABERS, J., dissents.

HENDERSON, Justice (specially concurring).

An appreciation of distinctions, in the admission of identifying statements in intrafamily sexual abuse prosecutions, can only result from a deep and thorough study of authorities and cases on this subject. Intrafamily dynamics create a special consideration of the rules of evidence and how to apply them. For openers, it is suggested that a greater understanding of the difficulties in decisions to admit evidence, or not admit evidence, will result by reading *United States v. Shaw*, 824 F.2d 601 (8th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988), and, *U.S. v. Renville*, 779 F.2d 430 (8th Cir. 1985). *See also*, Graham, *The Confrontation Clause, The Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship*, 72 Minn.L.Rev. 523, 529 n. 22 (1988); Note, *United States v. Renville: Admission of an Identification Made to a Physician under Federal Rule of Evidence 803(4)*, 31 S.D.L.Rev. 726 (1986); Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Col.L.Rev. 1745, 1749–53 (1983).

Before launching into any further legal discussion, I wish to point out that after a grand jury proceeding in this case, and at the referral request of a Haakon County social worker, and also pursuant to an oral stipulation between the state's attorney and defense counsel, Dr. Willis Sutliff, a pediatrician in Rapid City, South Dakota, examined two very young girls involved in this case.

To further appreciate the justification of the trial judge's evidentiary ruling, South Dakota's statutory scheme on child sexual abuse should be mentioned. South Dakota has an overall policy to protect both male and female children from child sexual abuse. Upon receiving a report of child abuse, several public offices are commanded, by state law, to notify the Department of Social Services of the alleged child abuse. These public offices include the state's attorney, county sheriff and police department. Then, the Department of Social Services must notify public officials of having received the report. SDCL 26–10–12. Thereupon, an investigation must be conducted by the Department of Social Services with other law enforcement officials cooperating. SDCL 26–10–12.1; SDCL 26–10–12.2.

Our consideration should now turn to the duties of various officials and public servants who owe vital responsibilities towards suspected child abuse victims in this state. The statutory scheme unfolds with greater particularity in SDCL 26–10–10. A physician is absolutely encharged with the responsibility of deciding if a child has received abusive or intentional neglect or has been starved or had physical injury inflicted. Failing this, a physician (as well as other public officials who have become aware of the abuse) may be held criminally responsible for a Class I misdemeanor and placed in confinement. The intent is clear: Keep the assailant away from the abused child.

Next, let us examine SDCL 19–16–8 which is identical to Fed.R.Evid. 803(4). Notice the word "or" before "statements of hearsay evidence are admissible which have been made for the purposes of medical diagnosis *or* treatment *and describing medical history.*" As the statute plainly

expresses, this includes "past or present symptoms, pain or sensation, *or the inception*" that are "reasonably pertinent to diagnosis *or* treatment ...".

In *Renville,* the Eighth Circuit held, *inter alia,* that "sexual abuse of children at home presents a totally different situation from that normally encountered in Rule 803(4) cases and this situation requires great caution in excluding highly pertinent evidence." *Renville,* at 437. The *Renville* Court expressed further that "we believe that a statement by a child [sexual] victim that the abuser is a member of the immediate household presents a sufficiently different case from that envisioned by the drafters of Rule 803(4) such that it should not fall under the general rule." According to the *Renville* court, the identity of a victim's assailant and other statements attributing fault are, per the general rule, ordinarily inadmissible under Fed.Rule Evid. 803(4) because identity and fault are not usually relevant to diagnosis or treatment.

If we apply the *Renville* analysis to the facts of this case, the doctor's testimony reveals that he asked a five year old girl pertinent questions to assist him in his diagnosis and treatment of the child. Here, this doctor did not attempt to inculpate the little girl's father; rather, the record reveals, as specified in the majority writing, that the little girl inceptually identified her father as the abuser. The doctor inquired about pain in his questioning of the little girl and past symptoms, exactly coinciding with language in SDCL 19–16–8. This same doctor testified that, based upon his examination, the cause of the enlarged vaginal area and scarred vaginal ring was sexual abuse. Note that SDCL 19–16–8 also refers to "describing medical history". This experienced doctor/pediatrician was qualified as an expert in child abuse and owed a duty, under state law, to obtain the medical facts and reasons behind his conclusion of child neglect which he was required to do or face criminal prosecution. Appellant vigorously assails the entire physical examination by the pediatrician advocating that its basic purpose was to secure evidence against appellant. A county social worker of the State of South Dakota, encharged with a statutory obligation, initiated the referral to the pediatrician for possible child abuse; the pediatrician, likewise encharged with a statutory obligation, conducted an examination for diagnosis and treatment (including a recommendation for mental treatment, if necessary). Prevention of the repetition of child abuse by removing the accused from the home is often a type of recommended treatment.

Prosecutions are extremely difficult in these types of cases, as, by their very nature, a child is the victim and the only witness. These children, who are victims of abuse, are extremely fearful to testify and particularly if a family member is the perpetrator. Needless to say, the South Dakota Legislature has attempted to respond to child abuse by enacting a general overall policy towards protecting child abuse victims and, furthermore, to provide for immediate physical or mental treatment shortly after the abuse. When the abuse is within the family, an examining physician must observe the psychological effects of the abuse. More importantly, that physician and all public officials in connection therewith, must act responsibly towards prevention in the future. In the family setting, not only is the fact of the abuse very relevant, but the identity of the perpetrator becomes directly germane. *See, State v. Vosika,* 83 Or.App. 298, 305, 731 P.2d 449, 453 (1987), *aff'd on rehearing,* 85 Or.App. 148, 735 P.2d 1273 (1987).

Finally, in spirit with this special concurrence, I would adopt the two-part test for the admissibility of statements made for the purposes of medical diagnosis or treatment under the hearsay exception in SDCL 19–6–8, which is the same as Fed.R.Evid. 803(4): (1) "The declarant's motive in making the statements must be consistent with the purposes of promoting treatment"; *and,* (2) "the content of the statement must be such as is reasonably relied on by a physician in treatment *or* diagnosis." *Renville,* at 436.

MILLER, Justice (concurring in result).

In my opinion, those portions of the doctor's testimony relating to the identity of defendant were inadmissible hearsay and should have been excluded. I suggest that the doctor's testimony ("I then asked ... if

her father had ..." and "... if he had ...") has no direct relationship to "diagnosis or treatment" (required by Rule 803(4)), especially some eight months after the criminal act.

However, considering the abundance of other direct evidence, I would hold that the admission of such testimony was harmless error. *State v. Stavig,* 416 N.W.2d 89 (S.D.1987); *State v. Davis,* 401 N.W.2d 721 (S.D.1987); *State v. Traversie,* 387 N.W.2d 2 (S.D.1986); and *State v. Remacle,* 386 N.W.2d 38 (S.D.1986).

SABERS, Justice (dissenting).

I dissent as to the admissibility of the physicians' *hearsay* statements. Under these circumstances, the doctor's testimony should have been limited to his physical examination of the child. This examination occurred eight months *after* the claimed abuse. The examination was too remote to be included within the ambit of SDCL 19–16–8. For the purpose of admitting *hearsay,* this statute requires treatment for a *current* condition, not an examination performed for legal, not medical purposes, eight months after the fact. SDCL 19–16–8.