**Carl IRON SHELL, Jr., Petitioner and Appellant,**

**v.**

**Walter LEAPLEY, Warden of the South Dakota State Penitentiary, Appellee.**

**No. 18019.**

Supreme Court of South Dakota.

Argued May 24, 1993.

Decided Aug. 11, 1993.

John A. Schlimgen of Stuart and Gerry, Sioux Falls, for petitioner and appellant.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for appellee.

AMUNDSON, Justice.

Carl Iron Shell, Jr. appeals from the circuit court's denial of his application for writ of habeas corpus. We reverse.

## FACTS

Carl Iron Shell, Jr. (Iron Shell) was convicted for the murder of his wife, Theresa Iron Shell (Theresa). The underlying facts of the case are thoroughly presented in Iron Shell's direct appeal, *State v. Iron Shell*, 336 N.W.2d 372 (S.D.1983). We recount only the facts necessary to this action.

On October 24, 1981, a passerby stopped to assist a vehicle that appeared to be stalled alongside a country road. Iron Shell and Theresa were in the front seat of the vehicle. Iron Shell's uncle, Nelson Iron Shell (Nelson), was sleeping in the back seat. The passerby determined that Theresa was dead and called the authorities.

When the authorities arrived they confirmed Theresa dead. It was later determined Theresa died from multiple blows to her head, abdomen, arms and legs, and back. Both Iron Shell and Nelson were found at the scene and were observed to be heavily intoxicated. Iron Shell and Nelson had blood on their clothing which analysis showed to match that of Theresa. The authorities arrested both men. After their arrest, Iron Shell and Nelson were interviewed separately. Although each of the men denied any recollection of or involvement in Theresa's death, Nelson stated during his interrogation that he was wakened from sleeping in the back of the car by someone yelling, "Carl, stop it. Carl, stop it."

Both men were subsequently indicted and jointly tried for Theresa's murder. Neither Iron Shell nor Nelson testified. However, Nelson's statement that he had heard cries of "Carl, stop it" was introduced through the testimony of Officer Jenson. Iron Shell's counsel did not object to the statement's admission, nor did he make any motions to exclude the statement from being introduced. The court later gave a jury instruction stating that Nelson's statement was to be considered only as to Nelson's verdict.

The jury convicted Iron Shell and acquitted Nelson. Iron Shell's conviction was upheld on appeal. *State v. Iron Shell*, 336 N.W.2d 372 (S.D.1983). He now comes before this court alleging ineffective assistance of counsel and seeking a writ of habeas corpus.

## ISSUES

1. Whether Iron Shell received effective assistance of counsel guaranteed by the Constitutions of the United States and South Dakota when his trial attorney failed to object to an inculpatory statement made by the codefendant through a third-party witness at trial?

2. Whether Iron Shell received effective assistance of counsel guaranteed by the Constitutions of the United States and South Dakota when his trial attorney failed to object to a jury instruction indicating that second-degree murder was a lesser included charge to first-degree murder?

## ANALYSIS

*Standard of Review*

Iron Shell alleges that he was not afforded effective assistance of counsel. When a convicted defendant alleges that he received ineffective assistance of counsel, he must show that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466

U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Courts are highly deferential in scrutinizing trial counsel's performance. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. We accordingly review the alleged errors of Iron Shell's counsel.

### Codefendant's Inculpatory Statement

Iron Shell first alleges that his trial counsel was ineffective in failing to object to the admission of Nelson's statement to the authorities during their joint trial. Although Nelson did not take the stand, his statement was introduced by the State through the testimony of Officer Jenson who had interviewed Nelson.

The United States Supreme Court has held that an inculpatory statement as to the defendant, made by a codefendant and related through a third party witness at trial, violates the defendant's Sixth Amendment right to confront his accuser. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton*, Bruton and Evans were tried jointly on charges of armed postal robbery. A postal inspector testified that Evans had confessed to him that Evans and Bruton had committed the robbery. Evans himself did not testify. The jury was instructed to consider the confession only in regard to Evans. Bruton was subsequently convicted. The United States Supreme Court reversed Bruton's conviction on grounds that admission of Evans' confession through the testimony of the postal inspector violated Bruton's constitutional right of confrontation. *Id.*

In reaching its decision, the Supreme Court placed heavy emphasis on the fact that Bruton was unable to cross-examine Evans in order to determine whether or not this was a mendacious statement. Prejudice caused by a codefendant's statement or confession cannot be dispelled if the codefendant does not take the stand. *Id.* at 132, 88 S.Ct. at 1625–26, 20 L.Ed.2d at 483.

Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

*Id.* at 135–36, 88 S.Ct. at 1627–28, 20 L.Ed.2d at 485.

■ Iron Shell, like Bruton, was denied his constitutional right to cross-examine his accuser, Nelson. As Justice Henderson pointed out in his dissent in *State v. Iron Shell*, "[Iron Shell's] accuser sat at the counsel table with him and [Iron Shell] could not ask a question." *Iron Shell*, 336 N.W.2d at 378 (Henderson, J., dissenting). Without the opportunity to cross-examine Nelson, Iron Shell could not mitigate the damage of the inculpatory statement which can only be construed as adding substantial weight to the prosecution's case. The uncontested admission of this statement of the codefendant violated Iron Shell's Sixth Amendment right.

■ The court's instruction limiting Nelson's statement to consideration only in Nelson's verdict is insufficient to overcome the substantial threat of prejudice to Iron Shell. The *Bruton* court also considered

that the jury had been given an instruction limiting the use of Evans' statement. While a jury may be instructed to disregard the codefendant's statement when determining the defendant's guilt, the "confession [inculpatory statement] is never deleted from the case[.]" *Bruton,* 391 U.S. at 131, 88 S.Ct. at 1625, 20 L.Ed.2d at 482. The Court held that despite the concededly clear instructions to the jury to disregard Evans' inculpatory statement as to Bruton, such instructions are an inadequate substitute for the constitutional right to cross-examination. *Id.* at 137, 88 S.Ct. at 1628, 20 L.Ed.2d at 485. "The effect is the same as if there had been no instruction at all." *Id.* Further, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 485. Such is the case here. Nelson's statement inculpating Iron Shell was powerfully incriminating considering all other evidence was of a circumstantial nature. The circumstantial evidence did not clearly establish whether one or both of the men had beaten Theresa, since it was presented in the joint prosecution of both. The "most damning evidence" directly focusing the guilt on Iron Shell was Nelson's statement indicating someone had cried, "Carl, stop it." *Iron Shell,* 336 N.W.2d at 377–78 (Henderson, J., dissenting).

It is not possible to ascertain whether or not the jury disregarded Nelson's statement when considering Iron Shell's guilt. Nelson's statement could easily be interpreted as showing that Iron Shell had been beating Theresa. The statement aided Nelson in his defense and certainly was of no assistance to Iron Shell. It was the crucial evidence which directly incriminated Iron Shell. An instruction to the jury to disregard the statement when considering Iron Shell's case is insufficient to overcome the statement's prejudicial effect. " 'The naive assumption that prejudicial effects can be overcome by instructions to the jury, all practicing lawyers know to be unmitigated fiction.' " *Bruton,* 391 U.S. at 129, 88

S.Ct. at 1624, 20 L.Ed.2d at 481 (quoting *Krulewitch v. United States,* 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790, 799 (1948) (Jackson, J. concurring)). Iron Shell did not have the opportunity through cross-examination to develop Nelson's strong motivation to exonerate himself which is certainly a common human trait when a person is facing a serious charge such as murder.

The admission of Nelson's statement clearly violated *Bruton.* Now, we must determine if trial counsel's failure to object to the statement's admission constitutes ineffective assistance of counsel. We first assess whether counsel's performance was deficient. While trial counsel did not object to admission of Nelson's statement, he did recognize that having a joint trial would present difficulty in Iron Shell's defense and filed a motion for severance. The trial court denied the motion and this decision was affirmed on appeal. *Iron Shell,* 336 N.W.2d at 374. Nowhere in the motion, however, did trial counsel specifically allege that admission of Nelson's statement was a *Bruton* violation. Trial counsel testified at the habeas corpus proceeding that he could not recall being aware of the *Bruton* decision at the time of trial and further candidly admitted that he should have objected to the statement's admission on grounds of *Bruton.* The *Bruton* decision predated Iron Shell's case by thirteen years.

 Not only did trial counsel fail to object to Nelson's statement, he emphasized the statement in his closing argument even though the State had not referred to it during closing.

> "[I]f you believe that Nelson could have possibly heard someone say, Carl stop it, outside the car with the windows of the car rolled up, then Ladies and Gentlemen, you can bring in a verdict of guilty...."

Thus, contrary to the court's instruction to disregard Nelson's statement for purposes of determining Iron Shell's guilt, trial counsel called the statement to the jury's attention for consideration in reaching Iron

Shell's verdict. Allowing this damning evidence to go before the jury was deficient under the first prong of *Strickland.*

We next determine if this deficient performance was prejudicial to Iron Shell by depriving him of a trial "whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In determining whether counsel was ineffective, we must consider the totality of the evidence before the judge or jury. *Id.* at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture[.]" *Id.* at 695–96, 104 S.Ct. at 2069, 80 L.Ed.2d at 698–99.

Although this inadmissible evidence was inadvertently placed before the jury, the final result is that Iron Shell was denied his constitutional right to confront or test the statement by cross-examination. This unreliable and untested evidence (finger pointing by the codefendant) certainly polluted this proceeding. Since the Confrontation Clause's purpose is to assist a defendant in receiving a fair although not perfect trial, this pollution certainly undermines the reliability of the result in this prosecution and is prejudicial to Iron Shell. *Adams v. Leapley,* 489 N.W.2d 381 (S.D. 1992).

The denial of Iron Shell's writ for habeas corpus is therefore reversed. Accordingly, we do not reach the second issue.

MILLER, C.J., WUEST and SABERS, JJ., concur.

HENDERSON, J., concurs with writing.

HENDERSON, Justice (concurring).

In *State v. Iron Shell,* 336 N.W.2d 372, 377–78 (S.D.1983), believing there had been a *Bruton* violation, some 10 years ago, I dissented and wrote:

The most damning evidence in the trial against appellant came on direct examination of Officer Thomas L. Jensen by State's Attorney Long. When Officer Jensen was asked what codefendant witnessed, he stated: "Yeah, he indicated to me that he woke up and the car was parked along the roadway and that someone was hollering, Carl, stop it, Carl, stop it. Then he went back to sleep again." This was an out-of-court inculpatory statement as to appellant, made by his codefendant and related in court by a third-party witness. The prejudicial error of constitutional dimension arose in this case from appellant's inability to cross-examine the declarant (codefendant making the inculpatory statement), when he, the declarant, invokes his Fifth Amendment right to refuse to take the stand. The landmark case in the United States is *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The codefendant did not take the stand. As a result, this appellant was deprived of his Sixth Amendment right to confront his accuser. Yes, his accuser sat at the counsel table with him and he could not ask a question.

Justice Roger Wollman joined the dissent. He now serves on the Eighth Circuit Court of Appeals.

Was there harmless error before us—as it relates to *constitutional* error? Absolutely not. *See* the premier case of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman,* the United States Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. In *Chapman,* the United States Supreme Court made it very clear that for an error to be harmless, it must have made no *contribution* to the criminal conviction.

As recent as two years ago, in *Yates v. Evatt,* 500 U.S. ——, ——, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991) "contribution" was again focused upon:

To say that an error did not contribute to the verdict is ... to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.

A conviction was secured against Carl Iron Shell by an absolute violation of the *Bruton* rule. This Court cannot say that the statement given to Officer Jensen, attributed to Nelson Iron Shell, made no contribution whatsoever to the conviction herein.

Occasionally, the Law will flower and reseed itself. Here, it blooms into a sharpened consciousness of constitutional rights. And that consciousness is now articulated with an intention to right the wrong. Accordingly, I concur.