**Jerry OLESEN, Petitioner and Appellant,**

**v.**

**Steven W. LEE, Warden of the South Dakota State Penitentiary, and James Smith, Superintendent of Springfield Correctional Facility, and Mark Barnett, Attorney General, State of South Dakota, Appellees.**

**No. 18520.**

Supreme Court of South Dakota.

Considered on Briefs on April 27, 1994.

Decided Nov. 30, 1994.

Robert B. Anderson of May, Adam, Gerdes & Thompson Pierre, for petitioner and appellant.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for appellees.

AMUNDSON, Justice.

Jerry Olesen appeals the circuit court's order denying him a writ of habeas corpus. We affirm.

## FACTS

In 1986, Jerry Olesen (Olesen) was convicted of the following criminal offenses: two counts of rape in the second degree; two counts of sexual contact with a child under sixteen years of age; and one count of incest. The convictions arise from Olesen's sexual contact with L.Z., A.T., and L.S., his minor daughters. The underlying facts of this case were presented in Olesen's direct appeal, *State v. Olesen,* 443 N.W.2d 8 (S.D.1989). Olesen was sentenced to five consecutive three-year sentences for a total of fifteen years.

In this habeas corpus action, Olesen contends he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and Article VI, § 7, of the South Dakota Constitution, in the following respects: (1) Trial counsel failed to properly prepare witnesses to impeach the testimony of or to testify about L.S.'s reputation for truth and veracity; (2) during cross-examination, trial counsel failed to effectively exploit L.S.'s prior inconsistent statements; and (3) trial counsel failed to object to the prosecution's improper question.

## STANDARD OF REVIEW

In order for a convicted defendant to prevail in a habeas corpus proceeding, he must show that counsel's representation fell below an objective standard of reasonableness and that such deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Hopfinger v. Leapley,* 511 N.W.2d 845 (S.D.1994). A conviction will not be set aside simply because the outcome would have been different but for the counsel's error. *Lockhart v. Fretwell,* 506 U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Hopfinger,* 511 N.W.2d at 847.

'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient

performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'

*Iron Shell v. Leapley,* 503 N.W.2d 868, 870 (S.D.1993) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693)); *see also Lockhart,* 506 U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180.

■ Courts are highly deferential in scrutinizing trial counsel's performance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. It is necessary for us to judge the trial counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Olesen must overcome the presumption that, under the circumstances, the challenged action " 'might be considered sound trial strategy.' " *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694 (quoting *Michel v. Louisiana,* 350 U.S. 91, 100–01, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Upon review of the habeas court decision, this Court will not upset factual findings unless they are clearly erroneous. *Ashker v. Solem,* 457 N.W.2d 473, 476 (S.D. 1990).

## ANALYSIS

### Preparation of Witnesses

Olesen claims L.S.'s testimony was an indispensable component of State's case. In an attempt to undermine State's case, Olesen called several witnesses to give their opinion of L.S.'s reputation for truth and veracity. Olesen now argues that his trial counsel was constitutionally ineffective because he did not adequately prepare these witnesses prior to trial.

We approach such allegations with the realization that it is not difficult after contemplation and searching analysis of the record of a trial to find imperfections and irregularities therein and to conclude that both the trial judge and losing counsel might well have done a better job.

*High Elk v. State,* 344 N.W.2d 497, 501 (S.D. 1984) (citations omitted).

■ There is no question the evidence showed there was minimal pretrial witness preparation by counsel. The record also discloses that at least five defense witnesses testified about L.S.'s reputation for truth or veracity.[1] Although this was not a textbook example of direct examination, the issue of L.S.'s credibility was still presented for the jury's determination. Under the facts of this case, this lack of preparation cannot be viewed as rising to the level of constitutional deficiency.

These witnesses stated their opinion at trial and, considering the cumulative nature of this evidence, Olesen has not shown a situation where counsel's performance was so deficient that the result of the trial is fundamentally unfair or unreliable. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Lockhart,* 506 U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180. The habeas court's finding that trial counsel had adequately represented Olesen is not clearly erroneous.

### Prior Inconsistent Statements

■ Due to irregularities, three separate grand juries convened before Olesen was brought to trial. After the first grand jury's indictment had been dismissed and the second grand jury convened, L.S.'s testimony changed. Olesen does not explain what inconsistencies exist but, a review of the record shows at the first grand jury, L.S. testified that Olesen rubbed her vagina in October of 1979 and he had intercourse with her in August, 1979. During the second grand jury proceeding, and at trial, L.S. testified that Olesen not only rubbed her vagina in October, 1979, but engaged in sexual intercourse. No reference was made to the alleged Au-

---

1. SDCL 19–14–9 provides:
 The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
 (1) The evidence may refer only to character for truthfulness or untruthfulness, and

(2) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

gust, 1979, incident at the second grand jury hearing.

Olesen claims his trial counsel did not adequately cross-examine L.S. about these inconsistencies. The record indicates trial counsel did cross-examine L.S. about inconsistencies in her testimony.[2] At the habeas court trial, trial counsel testified: "I tried to impeach her as best I could and I pushed it as far as I thought I dared, to the jury." Trial counsel also stated that at trial he believed the prosecuting attorney's direct examination of L.S. "pretty much took any sting that I had in my cross-examination of her out of the picture."

> Because of the difficulties inherent in making the evaluation [of an attorney's performance during trial], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83, 93 (1955)). Olesen's trial counsel pointed out L.S.'s inconsistencies but testified that in his opinion it would have been detrimental if he "pushed" L.S. too far because the jury would gain sympathy for her. "Trial tactics, not errors, are being argued." *Jenner v. Leapley,* 521 N.W.2d 422, 430 (S.D. 1994) (citation omitted). "It is not our function to second guess the decisions of experienced trial attorneys regarding matters of trial tactics." *High Elk v. State,* 344 N.W.2d 497, 501 (S.D.1984) (citations omitted). "It is always easy to use hindsight to cast doubt on a lawyer's trial tactics, but a wrong or poorly advised exercise of judgment is not alone enough to support a subsequent claim of ineffective counsel." *Id.*

Upon review, this court concludes defense counsel's decision regarding the breadth of his cross-examination of L.S. on her prior inconsistencies falls within the realm of trial tactics and is not subject to second guessing by this court. Therefore, this was not a decision which would amount to ineffective counsel under the circumstances. *Roden v. Solem,* 431 N.W.2d 665, 667 (S.D.1988).

*Failure to Object*

At trial, the defense called numerous witnesses to impeach L.S.'s credibility. Witnesses testified at length about L.S.'s suicidal tendencies, drug usage, family problems, mental and physical maladies, and her lack of veracity. On rebuttal, State called Angini Tapscott, a psychologist, to describe symptoms suffered by women who have been sexually abused as children and to rehabilitate L.S.'s bruised credibility.

 Olesen claims his counsel was constitutionally ineffective because he did not object when the prosecution asked Tapscott the following question:

> Q Now, based upon your education, your experience in the area of working with sexually abused people and all the time that you have spent with L.S., do you have an opinion as to whether or not L.S. would fabricate a story involving sexual abuse?
>
> A No, she would not.

'Generally, the making or failure to make motions and objections are trial decisions within the discretion of trial counsel.

---

2. An example of this cross-examination is as follows:

> Q Now, [L.S.], at that time (at the grand jury), you told a different story than you told today, didn't you?
> A What do you mean?
> Q About your father and your sister and everything, you told a different story on November 24th that (sic) you did today?
> A Yes, I did.
> Q You told the grand jury and there you were under oath, were you not?
> A I remember.
> Q You took the same kind of oath in front of the grand jury as you did from this lady here today?
> A Yes, I did.
> Q You swore to tell the truth, nothing but the truth?
> A Yes, I did.
> Q You didn't do that, or did you? Did you tell the truth?
> A Half-way.
> Q Is there such a thing as half-way truth?
> A To me there is.

State v. Anderson, 387 N.W.2d 544 (S.D. 1986); State v. Tchida, 347 N.W.2d 338 (S.D.1984). This general rule will not apply, however, where trial counsel's actions cannot reasonably relate to any strategic decision and are clearly contrary to the actions of competent counsel in similar circumstances.'

Jenner, 521 N.W.2d at 425–26 (quoting Roden v. Solem, 431 N.W.2d 665, 667 (S.D. 1988).

SDCL 19–14–9 prohibits witnesses from infringing upon a jury's function by testifying that another witness has testified truthfully. Based on this rule, trial counsel should have objected to the prosecution's question because it did not ask for an opinion as to reputation for truthfulness or the lack thereof. " '[I]t is hornbook law that the credibility of a witness and the weight to be given his testimony rests exclusively with the jury.' " United States v. Azure, 801 F.2d 336, 340 (8th Cir.1986) (quoting United States v. Rosenberg, 108 F.Supp. 798, 806 (S.D.N.Y. 1952), aff'd, 200 F.2d 666 (2d Cir.1952)). "An expert 'may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility.' " Azure, 801 F.2d at 340 (quoting United States v. Samara, 643 F.2d 701, 705 (10th Cir.), cert. denied, 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981) (quoting United States v. Ward, 169 F.2d 460, 462 (3d Cir.1948))). Therefore, we find that Olesen has satisfied the first prong of the Strickland analysis by showing trial counsel's performance was deficient. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

We must next determine if this deficient performance was prejudicial to Olesen, causing the result of the trial to be unreliable or fundamentally unfair. Lockhart, 506 U.S. ——, 113 S.Ct. at 842, 122 L.Ed.2d at 191. "The defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. " 'Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture[.]' " Id. (quoting Strickland ). This is not one of those errors.

This question was asked to rebut a litany of defense witnesses questioning L.S.'s credibility. This witness was obviously not called during the State's case-in-chief. Tapscott was the last witness called to testify at trial. In a perfect trial an objection would have been made, but a criminal defendant is not entitled to a perfect trial, only a fair one. State v. Bennis, 457 N.W.2d 843, 847 (S.D. 1990) (citing Brown v. United States, 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208, 215 (1973)). Failure to object to a single question asked on rebuttal does not cast a doubt on this proceeding which renders it fundamentally unfair or unreliable.[3]

The habeas court's decision is affirmed.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, Retired Justice, who was a member of the Court at the time this action was submitted, dissents.

KONENKAMP, J., not having been a member of the Court at the time this case was submitted to the Court, did not participate.

HENDERSON, Retired Justice (dissenting).

It is obvious that the issues of this case were not presented, nor under consideration,

3. The dissent cites to In Matter of Tidball, 503 N.W.2d 850 (S.D.1993), where the misdeeds which brought Attorney Tidball before this court, occurred in 1989, 1990 and 1991. The trial of Olesen concluded with a guilty verdict on May 15, 1986. The record in this case does not include a claim that Tidball's defense of Olesen was deficient due to Tidball's alcoholism in 1986. It would go without saying that, if Tidball were "operating with an impotent, deadened, crippled

and disabled mind" during the May 1986 trial, Olesen would have presented such a claim in this proceeding. If the alcoholism issue had been presented to the habeas court as an integral part of the ineffective assistance of counsel claim, it would have accordingly been addressed in this decision. To conclude in retrospect that Tidball's alcoholism resulted in ineffective assistance of counsel at the time of the 1986 trial is speculative and unsupported by the record.

in Olesen's first appeal found at 443 N.W.2d 8 (S.D.1989). We have before us, a totally different legal proceeding, by its very nature, with several issues that were never presented to this Court in 1989. It is not my intent to indulge in legal generosity so as to soften the criticism of Olesen or this author towards his trial counsel, Keith Tidball. Our quest should be from a standpoint of legal review and not to achieve a result in this habeas corpus proceeding which would buttress our holding in the first appeal, thus relieving Mr. Tidball of his inadequate representation of Olesen. Cicero once proclaimed that "... nothing is generous if it is not at the same time just." We should seek justice in this case and not cover up the costly errors of attorney Tidball in the trial of this case.

When I wrote my special concurrence in the first appeal, I was simply not aware of the many failures by attorney Tidball to represent Olesen in a competent manner; nor were the other members of this Court aware. We can only adjudicate upon those issues which are briefed as issues. *Graham v. State*, 328 N.W.2d 254 (S.D.1982). This Court should not focus "on mere outcome determination," as expressed in *Lockhart v. Fretwell*, 506 U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993). Tidball's errors, detailed below, were so serious that they deprived Olesen of a fair trial. For that conclusive reason, as set forth more particularly herein, I dissent to the majority opinion.

On July 21, 1993, this Court entered an extensive opinion on the professional conduct of attorney Tidball. *Matter of Tidball*, 503 N.W.2d 850 (S.D.1993). He was suspended from the practice of law for a period of three years. His serious ethical breaches included using his clients' money, locking up his clients' money in a safe to avoid his own creditors (he was fearful of depositing his client's money in a bank), co-mingling his funds with those of his clients, failing to have a trust account, and wrongfully appropriating money within a settlement, then converting it to his own use. When Olesen was tried in Haakon County, South Dakota, with Tidball

as his defense counsel, it is apparent, by reviewing *all documents and pleadings* submitted as evidence in his disciplinary proceeding before this Court, that Tidball was an absolute alcoholic—practicing law—in the state of South Dakota for many years, including the time-frame when he defended Olesen.

Justice Amundson, who writes this decision, wrote in *Tidball* that Tidball was an attorney "... who was operating with an impotent, deadened, crippled, and disabled mind during the periods in question." *Tidball*, 503 N.W.2d at 859 (Amundson, J. dissenting). This special writing was all tied into Tidball's alcoholism over a period of many years. By reading the majority opinion in the disciplinary action, it becomes obvious that his alcoholism was existent in the latter 1980s and spilled over into the early 1990s.

Under our holding in *State v. Cody*, 322 N.W.2d 11 (S.D.1982), I take judicial notice of the extensive showing made by Tidball, submitted to this Court in April, 1993. Further reference is made to two South Dakota statutes, SDCL 19–10–3 and SDCL 19–10–6.* Numerous affidavits and documents were filed upon Tidball's behalf reflecting his alcoholism, while he was practicing law. I do not have to vote or think in a vacuum. In *Cody*, 322 N.W.2d at 12, fn. 2, 31 C.J.S. *Evidence* § 50(2) (1964) is sourced for the proposition that a court may generally take notice of its own records or prior proceedings.

Tidball's affidavit reflects that he began using alcohol beverages when he was a small child. He expressed, "I regularly, *during the entire time since my admission to the Bar*, used whiskey and believed that it had no harmful effect on my or my ability to do my work. Despite such previous belief it is now clear to me that my increasing consumption of whiskey was compounding my problems rather than helping me resolve them." (Emphasis supplied mine.) Later, he expressed, "*I was entirely dependent on whiskey* and irrationally believed that if I just ignored the problems, I would never have to deal with them." (Emphasis supplied mine.)

---

* The former statute recites: "A court may take judicial notice, whether requested or not." The latter statute provides: "Judicial notice may be taken at any stage of the proceeding."

In his affidavit, he also admits to alcohol dependence and and threw himself on the mercy of this Court. He even agreed, before the suspension of three years, to close down his private practice and to sell his library. A March 7, 1993, report filed in the disciplinary proceedings, from the Chief of the Psychology Service Department of Veteran's Affairs, Ft. Meade, South Dakota, which Tidball attached to his sworn affidavit, reflected: "A lengthy history of alcohol abuse." Tidball also had "an adjustment disorder with depressed mood secondary to a financial problem." He suffered from "depression," according to the report. The discharge summary from the Veteran's Administration, which Tidball also attached to his sworn affidavit, expresses: "[Tidball] stated that *he has a 54 year history of sporadic alcohol abuse and this is his first treatment.*" (Emphasis supplied mine.) When going back and reading over the disciplinary proceedings, it becomes obvious to this writer *as to why* Tidball misfired in his defense of Olesen.

In my opinion, the result of this trial is unreliable for several reasons. An example of his inadequate preparation for trial was interviewing defense witnesses at the courthouse, *for the first time,* during the trial. We cannot say such action is reasonably related to a strategic decision. *Phyle v. Leapley,* 491 N.W.2d 429 (S.D.1992). *Accord Roden v. Solem,* 431 N.W.2d 665 (S.D.1988). It is preposterous to assume that any good practicing defense lawyer would wait until the trial to interview his witnesses for the first time! Such preparation falls below an objective standard of reasonableness. Note, this Court recently expressed such a standard in *Iron Shell v. Leapley,* 503 N.W.2d 868 (S.D.1993).

For this reason alone, Olesen is entitled to a new trial. A fair trial. A trial where his witnesses are interviewed in advance of the trial. One of the defense witnesses, Curtis Mills, testified in this habeas corpus hearing that he had an opinion regarding L.S.' untruthfulness; he testified he was available at trial but was never asked that question as a witness. Mills testified he was staying at a motel room in Philip (situs of the trial) during the entire trial; Tidball, he testified,

never met with him or talked to him. Had he been interviewed and his testimony discussed with Tidball, he testified he would have been prepared to testify and would have been a better witness.

One Tom Tassler testified in the habeas corpus proceeding as did his wife Sandy. She testified the criminal trial was in progress when Tidball talked to her and it was for only a few minutes. Tom testified he had an opinion of the lack of truthfulness of L.S., but *Tidball never met with him and never called him as a witness!* Two witnesses, Irene Oedekoven and Roy Olesen, testified that Tidball never told them (before they took the stand) what questions would be asked of them; furthermore, any preparation was very minimal. A competent defense lawyer would not neglect to thoroughly interview his witnesses before putting them on the witness stand!

No objection was made by defense counsel to the following question asked of a social worker (State's expert) during trial:

Q. Now, based upon your education, your experience in the area of working with sexually abused people and all the time that you have spent with [L.S.], do you have an opinion as to whether or not [L.S.] would fabricate a story involving sexual abuse?

A. No, she would not.

Such a question was highly objectionable. *United States v. Azure,* 801 F.2d 336 (8th Cir.1986). Tidball should have immediately objected but he did not. Assistant Attorney General Campbell testified he probably would have objected to this question; Tidball could not recollect why he did not. The inference was clear: You, the jury, should believe L.S. because Tapscott, the social worker, believed her. State's Attorney Barnett testified he had an alternative question to ask if objection was made to the question. Credibility of the alleged victim was the key to the case. The social worker's testimony was elicited to bolster the key witnesses' testimony. She usurped the function of the jury which is to determine the facts. Again, this is not trial strategy; rather, it is incompetency. This Court should not condone such trial practice.

Olesen was denied effective assistant of counsel, resulting in a fundamentally unfair proceeding. *Lockhart,* 506 U.S. at ——, 113 S.Ct. at 842–43. Unfortunately, there was another costly error.

Because of the State's emphasis on the testimony of L.S., her lack of credibility was important to Olesen's defense. Grand Jury transcripts reveal that L.S. changed her sworn testimony concerning the alleged sexual contact. Olesen's attorney was well aware of these prior inconsistent statements. Nevertheless, *he completely failed to impeach her credibility at trial.* In a case lacking physical evidence, the failure of defense counsel to impeach a purported victim's detailed inconsistencies is devastating. A reasonable and prudent lawyer would not have avoided cross-examination on a winning point, namely, a prior inconsistent statement made under oath. *Tidball knew about these inconsistent statements as he had the transcript and was aware of the conflicting stories.* During the habeas corpus hearing, Tidball testified that his most important and potentially effective strategy was to impeach L.S. The statements she made, under oath, to the Grand Jury, were far different than the statements that she made to the jury which convicted Olesen. Yet, astoundingly, she was never cross-examined on the inconsistencies. Why—why—I ask? Cross-examination is like a sharp knife, for it cuts to the quick of the truth. It is the greatest weapon that a defense lawyer has to get to the truth of the facts and the veracity of the witness. Nothing was to be gained by Tidball failing to cross-examine on this critical aspect of the defense. By footnote 3, the majority writer asserts that the life-time alcoholism of Tidball is immaterial because it was not advocated below; ineffective representation was vigorously asserted below and this writer has furnished the background by Tidball's own sworn statement as to *why* he was ineffective: His dependence was upon whiskey, not the law. By his own statements, he was an alcoholic consuming alcohol from the time he was a little boy!

This dissenter can envision no trial tactic justified by defense counsel's neglect in highlighting weaknesses of damaging testimony herein. Due to the nature of the inconsistent details by the alleged victim, there is a rea-sonable probability that, but for ineffective representation, the verdict would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Luna v. Solem,* 411 N.W.2d 656 (S.D. 1987). In Finding of Fact No. 8 of the circuit court, the circuit court expressed that "... defense counsel properly prepared all such witnesses for trial based upon their knowledge of the pertinent facts in petitioner's case." This Finding of Fact was clearly erroneous, under this record. Tidball even acknowledged at the habeas hearing that his approach on this subject did not go as well as he had hoped for at the trial. If he had sat down, before trial, and professionally met with and prepared these witnesses, it is my opinion that the case for the defense would have gone better. Because of this erroneous Finding of Fact, the Conclusion of Law (that Tidball's presentation was anything other than adequate) is simply unsupported in fact. It is interesting to note that at the habeas hearing, State's Attorney Barnett testified that he had to reluctantly agree that these unsophisticated witnesses unquestionably needed more preparation. I earnestly suggest that based upon the disciplinary proceeding reflecting that Tidball was an alcoholic for a long period of time, plus the record in the habeas corpus proceeding, the habeas court should be reversed and this case should be remanded for a new trial—a fair trial. Thereby, we would serve the best interests of justice by promoting good quality in its administration.

Why this earnest dissent *now?* Remember: Under South Dakota law, habeas corpus proceedings, concerning claims of ineffective assistance, are preferably heard therein—not the appeal in chief. *State v. Fender,* 504 N.W.2d 858 (S.D.1993).

As it stands now, the result cannot be described as reliable. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Hopfinger v. Leapley,* 511 N.W.2d 845, 847 (S.D.1994).

Here, a truth exists. We have a manifest usurpation of a constitutional right. Only judicial blinders can obscure it.