**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Ron J. ENGEL, Defendant and Appellee.**

**No. 17141.**

Supreme Court of South Dakota.

Argued Nov. 28, 1990.

Decided Feb. 6, 1991.

Jeffrey P. Hallem, Asst. Atty. Gen., for plaintiff and appellant; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Bryce A. Flint, Sturgis, for defendant and appellee.

SABERS, Justice.

State appeals order suppressing evidence obtained pursuant to a search warrant for lack of probable cause.

### Facts

On June 22, 1989, a man identifying himself as Tom Wilson brought a package which he said contained a "soil sample" to a California United Parcel Service (UPS) office. Because shipments of soil samples are to be inspected under UPS policy and because Wilson seemed nervous, UPS personnel opened the package in the presence of a California police officer, who tested the white substance inside and determined that it was cocaine.

The package was addressed to Ron Engel of Spearfish, S.D. The California officer who identified the contents as cocaine contacted agent Greager of the federal Drug Enforcement Agency (DEA) in Rapid City and told him about the intercepted cocaine shipment. The package was then re-sealed and sent to the UPS office in Sturgis, S.D.

Before the package arrived in Sturgis the next day, Greager called and met with Mike Wibben, a local drug enforcement officer for Butte, Lawrence and Meade counties. Greager and Wibben prepared two affidavits describing the circumstances of the expected cocaine shipment and two search warrants, one for the UPS office in Sturgis and one for Engel's home in Spearfish. The second search warrant ordered the officers to search the Engel residence for cocaine as well as "any other illegal drugs or paraphernalia that constitutes the packaging or distribution of controlled substances." This search warrant did not on its face make execution contin-

gent on the controlled delivery of the cocaine to the Engel residence. Nevertheless, Circuit Judge Johnson of Deadwood signed both search warrants, with an oral admonition to Wibben not to serve the search warrant at the Engel residence until the package containing cocaine was delivered.

That afternoon, June 23, 1989, Wibben took custody of the package containing cocaine at the Sturgis UPS office and, dressed as a UPS agent, delivered the package to Engel. Approximately thirty minutes after this controlled delivery, Wibben, Greager and other officers served the search warrant on Engel and searched Engel's house. Besides the package of cocaine delivered by Wibben, the officers discovered inositol powder, a scale, packaging, bottles, baggies and a phone bill showing calls to the town in California where Wilson lived.

On July 20, 1989, Engel was indicted by a Lawrence County grand jury on one count of possession with intent to distribute a controlled substance in violation of SDCL 22–42–2. On August 2, 1989, Engel was arraigned and pled not guilty before Circuit Judge Moses. On September 18, 1989, Engel moved to suppress the evidence seized from his home under the search warrant signed by Judge Johnson. On May 1, 1990, following two hearings on the motion, Judge Moses issued Findings of Fact, Conclusions of Law, and an Order suppressing all evidence obtained under the Engel residence search warrant for lack of probable cause. On June 4, 1990, this court granted the state's petition for intermediate appeal from the order suppressing the evidence.

### 1. Standard of Review

When a court makes a ruling on probable cause, it should do three things:

(1) Establish the underlying facts.

(2) Articulate a probable cause standard against which the facts are to be weighed.

(3) Apply the probable cause standard to the facts and make the ultimate decision to suppress or not to suppress the evidence.

In *State v. Pfaff,* 456 N.W.2d 558 (S.D. 1990), the state contested both the court's findings of fact and its decision to suppress. Therefore, we said, two standards of review were implicated. First, as to the factual determination, "'a trial court's findings resulting from a suppression hearing will be upheld unless clearly erroneous[.]'" *Id.* at 560 (*quoting State v. Woods,* 374 N.W.2d 92, 98 (S.D.1985), *cert. denied sub nom. Woods v. Solem,* — U.S. —, 110 S.Ct. 1952, 109 L.Ed.2d 314 (1990)).

Second, as concerned the ultimate decision to suppress the evidence, "'[f]or us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred.'" *Id.* at 561 (*quoting State v. Bartlett,* 411 N.W.2d 411, 414 (S.D.1987)).

In *Pfaff,* the state did not challenge the trial court's articulation of the legal probable cause standard in the abstract. "The law as to warrantless car searches is well settled [and] [t]he trial court acknowledged this[.]" *Id.*

Here, the state does not contest the facts found by the court, but contests the probable cause standard articulated by the court. Since that is a question of law, this court will review the challenged conclusions de novo. *State v. Byrd,* 398 N.W.2d 747, 749 (S.D.1986). If we determine under de novo review that the court erred in stating the law of probable cause, and that this error of law was not harmless, then we must reverse the court's ultimate decision to suppress. If, however, we agree with the court's statement of the law of probable cause, the only remaining question, as in *Pfaff,* is whether the court's application of the correct law to the facts constitutes an abuse of discretion, which means discretion "exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984). "Under the abuse of discretion standard, we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision." *State v. Pfaff,* 456

N.W.2d at 561 (*citing Peterson v. Peterson,* 434 N.W.2d 732, 734 (S.D.1989)).

### 2. *Probable Cause*

The state challenges three Conclusions of Law as erroneous, the first of which is # V.: "Controlled delivery of narcotics is not sufficient probable cause for a search of a residence without more information that narcotics were present."

■ According to the clear weight of authority, an anticipatory search warrant based on a controlled delivery of contraband to occur in the near future is not unconstitutional per se. *United States v. Garcia,* 882 F.2d 699 (2nd Cir.), *cert. denied sub nom. Grant v. United States* — U.S. —, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Dornhofer,* 859 F.2d 1195 (4th Cir.1988), *cert. denied* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989); *United States v. Goodwin,* 854 F.2d 33 (4th Cir.1988); *United States v. Hale,* 784 F.2d 1465 (9th Cir.), *cert. denied* 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986); *United States v. Lowe,* 575 F.2d 1193 (6th Cir.), *cert. denied* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); *United States ex rel. Beal v. Skaff,* 418 F.2d 430 (7th Cir.1969); *Johnson v. State,* 617 P.2d 1117 (Alaska 1980); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614, *cert. denied sub nom. Baker v. New York,* 409 U.S. 849, 93 S.Ct. 58, 34 L.Ed.2d 91 (1972); *State v. Gutman,* 670 P.2d 1166 (Alaska App.1983); *Alvidres v. Superior Court,* 12 Cal.App.3d 575, 90 Cal.Rptr. 682 (1970). *See also* 2 LaFave, Search and Seizure, § 3.7(c) (2d ed. 1987); *Illinois v. Andreas,* 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983).

■ We conclude that the circumstances of the anticipated controlled delivery recited in Wibben's affidavit provided probable cause to search Engel's residence for the cocaine delivered to him. However, the search warrant signed by Judge Johnson orders officers to search Engel's residence not only for this cocaine, but also for any other illegal drugs, paraphernalia or evidence. The probable cause supporting this wider search, apart from the controlled de-

livery, is a single paragraph in Wibben's affidavit:

The affiant, having learned from other law enforcement officers, experienced in controlled mail delivery, believes that the residence will contain other drugs or evidence of other drugs, as well as narcotics paraphernalia, notes and papers that will help identify the sender of the package, possible evidence of other crimes and identities of other drug violators, as well as the cocaine in the above described package.

Probable cause to search the entire premises for other drug-related items cannot be artificially separated from probable cause to search for the cocaine which was the subject of the controlled delivery. As stated in *State v. Wellner*, 318 N.W.2d 324, 327 (S.D.1982):

In reviewing ... affidavits, we must remember that the search warrant should not be invalidated by interpreting the affidavits in a hypertechnical manner; rather, we should read each affidavit as a whole and interpret each in a common sense and realistic manner. [Citations omitted.] 'The resolution of a marginal showing of probable cause on an affidavit should be largely determined by the preference to be accorded to warrants.' *State v. Clark*, 281 N.W.2d [412,] 414 [(S.D.1979)]. Thus, every reasonable inference possible should be drawn in support of the magistrate's determination of probable cause.

*See also Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Reading this affidavit in context and looking at the circumstances realistically with a view toward upholding the probable cause determination if possible, it is apparent that once Engel had possession of the cocaine for half an hour, officers had probable cause not only to believe that the delivered cocaine was on the premises, but also to believe that the delivery was no mistake and that other items associated with drug use might be found there as well. Therefore, we hold that the trial court erred in concluding that the affidavit and the controlled delivery of narcotics pro-

vided insufficient probable cause to justify the search of the residence for items other than those delivered.

### 3. *Oral Instructions*

The trial court also ruled under Conclusions of Law # VIII and XI that the search warrant was facially invalid because, although an anticipatory search warrant, it failed to specify that the warrant could not be executed until after the cocaine was delivered:

### VIII.

When an anticipatory warrant is used, the magistrate should protect against its premature execution by listing in the warrant conditions governing the execution which are explicit, clear and narrowly drawn so as to avoid misunderstanding or manipulation by government agents.

### XI.

That oral instructions do not sufficiently limit the scope of the search warrant, as was done here.

The state contests these two Conclusions of Law also.

■ *In United States v. Garcia*, 882 F.2d at 703–704, the Second Circuit Court of Appeals stated that "[w]hen an anticipatory warrant is used, the magistrate should protect against its premature execution by listing *in the warrant* conditions governing the execution which are explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." (Emphasis added.) While this is unquestionably the preferred procedure in issuing an anticipatory warrant, most courts addressing the question have refused to invalidate a warrant simply because it did not list the conditions precedent to its valid execution on its face. *See e.g. People v. Glen*, 30 N.Y.2d at 261–262, 331 N.Y.S.2d at 663–664, 282 N.E.2d at 619; *Alvidres v. Superior Court*, 12 Cal.App.3d at 582, 90 Cal.Rptr. at 686. *See also* 2 LaFave, *supra*, § 3.7(c) at 98–99. In *State v. Gutman*, 670 P.2d at 1173, the Alaska appeals court held that although the warrant itself failed to specify the contingent

events which would make its execution valid, those events were adequately spelled out in the supporting affidavit and the warrant incorporated the affidavit by reference. That is also the case here. Moreover, a later affidavit by Wibben established that Judge Johnson orally instructed Wibben not to execute the warrant until the package was delivered. This affidavit was not disputed. We conclude that while express limitations written on the face of an anticipatory search warrant are preferable, oral limitations by the issuing magistrate coupled with clear references to the necessary contingent event in the affidavit can be sufficient to limit the scope of an anticipatory search warrant. This is especially so where, as here, the search is in fact made after the controlled delivery in accordance with said verbal instructions. We hold that the Conclusions of Law to the contrary were error.

Therefore, we reverse the trial court because there was sufficient probable cause to justify the search of Engel's residence and the search warrant was adequately limited in scope to the probable cause that existed.

The state also argues that even if there was insufficient probable cause to justify the search of Engel's residence, the evidence found there should not have been suppressed under the "good faith" exception to the exclusionary rule. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, since we have determined that there was probable cause justifying the search of Engel's house for the cocaine and the other items, we do not reach this question.

Reversed and remanded.

MILLER, C.J., WUEST, J., and MORGAN, Retired Justice, concur.

HENDERSON, J., concurs specially.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not having been a member of the court at the time this case was argued, did not participate.

HENDERSON, Justice (specially concurring).

Appellee based his motion to suppress upon three grounds: (1) That the search warrant expressed the home to be searched was 13 Westview Road but the search actually took place at 13 West View Drive; (2) That there lacked probable cause for the search warrant to be issued; and (3) That the search was entrapment per se.[1]

Below, the State presented no testimony and simply relied upon the face of Officer Wibben's affidavit in support of the search warrant and the face of the search warrant itself.

Proposed Findings of Fact and Conclusions of Law were submitted by the State; Appellee filed objections to the State's said Proposed Findings and Conclusions.

In my opinion, this Court must decide if the search warrant, as issued, was based upon probable cause contained in Officer Wibben's affidavit; and, secondly, decide what constraints should exist for "anticipatory search warrants" in South Dakota. It appears that the South Dakota Supreme Court is being given an initial opportunity to review the "controlled delivery" of contraband and the issuance of an "anticipatory search warrant."

These "anticipatory search warrants" are a new breed of cat for South Dakota but as the extensive string cite portrays in the majority opinion, they are accepted by many respectable authorities. If I have read the cases correctly, there is reputable authority to the contrary, said authorities being recited in *Garcia,* at 702. There appears to be division among the Circuits in the United States Courts of Appeal. Of course, we have the right to guarantee to our citizens, in South Dakota, more protection under the South Dakota State Constitution than our citizens might have under the United States Constitution. *State v. Opperman,* 89 S.D. 25, 228 N.W.2d 152 (1975). So which direction do we fly? Towards greater protection under *Opperman?* Towards *Garcia* and those who favor the constitutionality of the "anticipato-

---

1. Entrapment was not presented as an issue on appeal. Therefore it is not before us.

ry warrant?" Or towards those authorities which would cast aside "anticipatory warrants" for the reason that they are violative of the Fourth Amendment?

Eight years ago, in *State v. Pettis*, 333 N.W.2d 717 (S.D.1983), this Court decried the use of and sale of narcotics. We there expressed:

> Selling drugs is a harsh and unsavory business. Many drug dealers make handsome profits from their endeavors. Drug abuse has devastated countless American youth to include young South Dakotans. Drugs are a peril to our society.

Justice Dunn quoted this language, written by this Author, in his dissent in *State v. Weiker*, 342 N.W.2d 7 (S.D.1983). The sale and use of narcotics causes the greatest scourge on our society today and reaches down into our schools to destroy our most precious asset, the children. Spearfish, South Dakota, happens to be the site of Black Hills State University. My Supreme Court District encompasses the Black Hills. Old timers call our Black Hills the "Northern Hills," the "Central Hills," and the "Southern Hills." Drug trafficking has been prevalent and historic in the "Northern Hills" for at least two decades in the cities of Lead,[2] Sturgis, Spearfish and Deadwood. Historic Deadwood was the scene of an early gold rush. Opiate dens were harbored under the streets of historic Deadwood.[3] They are past history but they reflect an early evil influence of drugs in the Northern Hills. As I write this, I think of the thousands of youth who are destroyed by drugs in this nation and the hundreds who have become addicted in our Northern Hills. Drug traffickers seem attracted to this area and the above mentioned cities are close in proximity to Spearfish, South Dakota, the site of Black Hills State University.

Therefore, to help rid this scourge, I travel down the *Garcia* road with the author, Justice Sabers, and the other distinguished Justices of this Court, who have likewise joined his writing. This is not a geographic place or the time for an extension of *Opperman*. In doing so, I maintain that the "anticipatory warrants" are an effective tool to fight criminal activity and to also protect Fourth Amendment rights to individuals.

Obviously, there must be limitations when you postulate as to what will transpire in the future; in an application of the law in "anticipatory warrants," you are on shaky ground because you do not know what the future shall unfold. There is a potential for abuse in "anticipatory warrants."

---

2. Lead is situated atop of the "Homestake Lode," progenitor of the Homestake Gold Mine, the largest gold mine on the North American Continent.

3. Tourists now view these as "tours."