STATE of South Dakota, Plaintiff
and Appellee,

v.

Christine or Christy JOHNSON, aka
Christy Carrow, Defendant and
Appellant.

STATE of South Dakota, Plaintiff
and Appellee,

v.

Brent JOHNSON, Defendant
and Appellant.

Nos. 18059, 18060.

Supreme Court of South Dakota.

Considered on Briefs Aug. 31, 1993.

Decided Dec. 22, 1993.

Rehearing Granted Feb. 18, 1994.

**682**

Mark Barnett, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

James E. McCulloch, Minick and McCulloch, Vermillion, for appellant, Christine Johnson.

Wayne D. Groe, Stickney and Groe, Elk Point, for appellant, Brent Johnson.

SABERS, Justice.

As a result of a controlled delivery of drugs by DCI agents, Defendants were convicted of possession of drugs and appeal. We affirm.

### Facts

On November 8, 1991, a United States Postal Service Express Mail package addressed to Christine Johnson (Christine), Rt 1 Box 12A, Beresford, South Dakota from Chris Davis (Davis) was inadvertently delivered to Citibank in Sioux Falls by post office personnel. The following day, Citibank personnel opened the package and discovered a "white powdery substance" inside. Sioux Falls police were notified. The substance, which weighed slightly more than two grams, field-tested positive for methamphetamine.

State Division of Criminal Investigation (DCI) agents decided to make a controlled delivery of the package to Christine. Agent Barry Mennenga (Mennenga) made up two fake bindles, each approximately one gram in weight (Exhibit 8). One of the bindles contained only inositol, a "cutting agent." The other bindle contained mostly inositol with a small amount of the methamphetamine.

After an unsuccessful attempt to deliver the package that day, DCI Agent John Dalziel (Dalziel) left a note at Christine and Brent Johnsons' mobile home indicating that the package would be delivered before 10:00 a.m., Tuesday, November 12, 1991.

Shortly before 10:00 a.m. on Tuesday, Dalziel, posing as a U.S. Postal Service employ-

ee, delivered the package to the Johnsons' residence. Christine met Dalziel on the front porch of the mobile home. She identified herself and accepted the package containing the two bindles. Within seconds after Christine accepted the package, Dalziel arrested Christine for possession of methamphetamine and retrieved the package from her.

Christine went inside the mobile home to tell her husband, Brent Johnson (Brent), that she had been arrested. Dalziel accompanied her, carrying the package. DCI Agent Harvison (Harvison), who followed Christine and Dalziel into the mobile home, found and unloaded a shotgun lying inside the front door. Defendants refused to consent to a search of the mobile home.[1]

Christine was taken by Beresford police to the station. Dalziel placed the package in the trunk of his car and returned to Vermillion with Harvison to obtain a search warrant. Mennega and Officer Dave Gillespie stayed inside and secured the mobile home so that evidence was not destroyed while Dalziel and Harvison were obtaining the search warrant. Brent remained in the mobile home. After approximately 1½ hours, Dalziel returned to the mobile home and executed the warrant.

Christine was found guilty of possession of methamphetamine and more than one pound of marijuana. Brent was found guilty of possession of more than one pound of marijuana. Defendants raise five issues on appeal. We affirm.

### 1. Search Warrant

◼ Defendants filed Motions to Suppress the evidence obtained by the police in the search of their mobile home. According to Defendants, the failure to state in the affidavit that the package was no longer in the residence was a material omission which, if included, would have prevented the finding of probable cause upon which the search warrant was issued. The motions were denied.

"Our scope of review on a motion to suppress is whether the trial court abused its discretion. As to any factual determinations, our scope of review is the clearly erroneous standard. On appeal, this court must determine whether the trial court's findings are against the weight of the evidence." *State v. Brings Plenty*, 459 N.W.2d 390, 399 (S.D. 1990) (citations omitted). "This court will overturn the trial court's decision to suppress or not to suppress if we find the trial court has exercised its discretion to an end or purpose not justified by, and clearly against reason and evidence." *State v. Zachodni*, 466 N.W.2d 624, 630 (S.D.1991) (citations omitted).

Defendants argue that the fruits of the search should be suppressed because the intentional omission of material facts in the affidavit invalidated the warrant. The claimed omission is the fact that the package containing methamphetamine was no longer at the Johnson residence. "The affidavit need only show facts sufficient to support a finding of probable cause. Therefore, omissions of other facts would not be misrepresentations unless they cast doubt on the existence of probable cause." *United States v. Dennis*, 625 F.2d 782, 791 (8th Cir.1980) (citations omitted). "The question then becomes whether the alleged omissions would cast doubt on the existence of probable cause." *Brings Plenty*, 459 N.W.2d at 401.

Probable cause justifying a search is present where the facts found by the court or the magistrate would lead a reasonable and prudent person to believe it fairly probable that a crime had been committed and that evidence relevant to the crime would be uncovered by the search. Although the evidence supporting a probable cause determination must be more than a bare suspicion, it need not establish proof beyond a reasonable doubt or even proof by preponderance.

*Zachodni*, 466 N.W.2d at 629 (citations omitted). In this instance, probable cause means reason to believe that contraband will be located on the premises when the search takes place. *See generally United States v. Garcia*, 882 F.2d 699, 703 (2nd Cir.1989),

---

1. On the morning of November 12, Magistrate Mary Dell Cody had denied Dalziel's request for an anticipatory search warrant stating that she would not sign the warrant until after the delivery was made.

*cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). *See also State v. Baysinger,* 470 N.W.2d 840 (S.D.1991); *State v. Engel,* 465 N.W.2d 787 (S.D.1991).

The omission of the fact that the package was no longer in the residence does not rise to the level of a misrepresentation because it does not "cast doubt on the existence of probable cause." *Dennis,* 625 F.2d at 791. The affidavit reported the interception of a package containing two grams of methamphetamine addressed to Christine Johnson and that she in fact received that package at the listed address. The accompanying letter established her knowledge that she would be receiving the package. A reasonable inference was that this was not an isolated incident and that the home contained other controlled substances, as well as incriminating evidence. *Baysinger,* 470 N.W.2d 840; *Engel,* 465 N.W.2d 787. Clearly, the affidavit together with the attached letter to Christine would lead a reasonable and prudent person to believe it fairly probable that contraband would be located in the home and that relevant evidence would be uncovered by the search. *Id.* Because the omitted fact was not material to a finding of probable cause, we need not consider whether its omission was intentional. *Dennis,* 625 F.2d at 792 (citation omitted).

■ Defendants also argue that the evidence seized during the search was tainted because the affidavit upon which the search warrant was issued contained fruits of an illegal entry into their home. While information that is the result of an illegal entry may not be used to obtain a search warrant by placing fruits of that entry in the search warrant affidavit, the statement "delivered to her residence" in the affidavit is not information obtained as a result of an illegal entry. The package was given to Christine outside the mobile home where she was arrested. The package was retrieved at that point and

then taken into the mobile home by Dalziel, the arresting officer, only because Christine wanted to go back into the home to tell Brent that she had been arrested. The evidence was delivered and seized outside the home and was not the result of an illegal entry. While the affidavit states that the package was "delivered to her residence," which was true, the warrant in no way depended on observations made during the securing process. *See State v. Habbena,* 372 N.W.2d 450, 455 (S.D.1985) ("[T]he evidence in this case shows that the preparation of the affidavit was commenced prior to the securing and the information as to the address and the fact that the buy money and additional cocaine were present in the house was obtained from a third person outside the house and prior to the entry[.]"); *See generally Segura v. United States,* 468 U.S. 796, 814, 104 S.Ct. 3380, 3390, 82 L.Ed.2d 599, 614–15 (1984).[2] Here, as in *Habbena,* the warrant arose from a legal source of information and therefore was valid. The evidence seized thereunder need not be suppressed. *Habbena,* 372 N.W.2d at 455–56.

■ Mennenga and Gillespie stayed inside the mobile home and secured it so that evidence was not destroyed while Dalziel and Harvison returned to Vermillion to obtain the search warrant. Conversations occurring inside the home during this time were taped and played for the jury during the trial. Defendants argue that the tape was inadmissible because it is the direct fruit of the illegal "securing" process. The securing process was not, however, illegal.

[S]ecuring a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.

2. According to the Court in *Segura:*

None of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioners' apartment; the information came from sources wholly unconnected with the entry and was known to the agents well before the initial entry. No information obtained during the

initial entry or occupation of the apartment was needed or used by the agents to secure the warrant. It is therefore beyond dispute that the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence now challenged.

468 U.S. at 814, 104 S.Ct. at 3390.

. . . .

[A]n entry *in the absence of exigent circumstances* is illegal.... [O]fficers who have probable cause and who are in the process of obtaining a warrant have no reason to enter the premises before the warrant issues, absent exigent circumstances which, of course, would justify the entry.

*Segura*, 468 U.S. at 810, 812, 104 S.Ct. at 3388, 3389, 82 L.Ed.2d at 612, 613 (emphasis added) (citations omitted).[3] Clearly, exigent circumstances existed. If the officers had not entered the home and secured it, it is highly probable that Brent would have removed or destroyed the evidence. *See Segura*, 468 U.S. at 820, 104 S.Ct. at 3393, 82 L.Ed.2d at 618 (Stevens, J., dissenting) (citing *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) (authorities may enter a residence without a warrant in order to preserve evidence if there exists a demonstrable threat of imminent destruction of that evidence)). Additionally, the seizure was for a reasonable period of time. This is not an instance where a seizure, reasonable at its inception, became unreasonable because of its duration. *Id.* 468 U.S. at 823–24, 104 S.Ct. at 3395–96, 82 L.Ed.2d at 620–22 (while exigent circumstances may justify the entry into, and impoundment of, the premises pending a warrant, the duration must be reasonable). Therefore, the entry and securing was justified and legal.

## 2. Admissibility of Letters

■ Christine argues that the court erred in admitting statements contained in letters addressed to her, including the letter found in the package from Davis, who did not testify at trial. Christine claims the statements are inadmissible hearsay.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," SDCL 19–16–1, and "is not admissible except as provided by law or by chapters 19–9 to 19–18, inclusive, or by other rules prescribed by the Supreme Court." SDCL 19–16–4. These letters were not, however, offered to prove the truth of the matter asserted and therefore, do not constitute hearsay. They were offered, rather, to show Christine's knowledge of, and familiarity with, the sender, Davis, and drug trade terminology, and the fact that Christine knew the contents of the package delivered to her. *United States v. Safari*, 849 F.2d 891, 894 (4th Cir.1988), *cert. denied*, 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988). The trial court did not err in overruling Christine's objection to their admissibility. *Id.*

## 3. Motions for Severance

Defendants argue that the trial court erred in denying their motions for severance. SDCL 23A–6–24 provides:

Two or more defendants may be charged in the same indictment or information, if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately, *and all of the defendants need not be charged in each count.* (Emphasis added).

■ The trial court must balance the rights of the defendants to a fair trial against the interests of judicial efficiency, which includes possible prejudice to the government because of two time-consuming, expensive, and duplicitous trials. *State v. Andrews*, 393 N.W.2d 76, 79 (S.D.1986) (citations omitted). The decision to sever is a matter within the sound discretion of the trial court and we will not reverse a denial of a motion for severance absent a clear showing of prejudice and abuse of discretion. *Id.* (citations omitted).

**3.** The Defendants claim that this court held in *Habbena* that the securing process is an illegal act. A review of *Habbena* discloses that the trial court found that the initial securing process was a violation of Habbena's Fourth Amendment rights and suppressed a statement made to the officers before the arrival of the warrant, along with marijuana actually seen by the officers during the securing procedure. The State did not, however, seek a review of the trial court's ruling. This court went on to note in *Habbena* that "the trial court found the entry to secure the premises illegal *for lack of exigent circumstances* and suppressed a statement made by defendant to the officers[.]" 372 N.W.2d at 454. Unlike *Habbena*, exigent circumstances existed here.

Brent argues that he was prejudiced by the joinder of his trial with Christine's because only a small amount of the testimony and evidence presented dealt with the marijuana charge and the trial amounted to guilt by association, particularly since he is married to Christine. "Admission of evidence against only one of several defendants does not on its own create sufficient prejudice to justify reversal when proper limiting instructions are given to the jury." *Id.* (citations omitted).

In response to an objection during trial to a photograph depicting materials contained in the package delivered to Christine, the trial court stated, "Just so the jury understands, anything to do with the alleged methamphetamine only deals with Christine Johnson and certainly not Brent Johnson. He isn't charged with methamphetamine possession, only Christine is." The court repeated that admonition during the trial. Jury Instruction No. 17 stated that evidence relating to methamphetamine possession had no bearing on the issue of the charge against Brent. "This court has held that such language is a sufficient cautionary instruction which guards against prejudice to an individual defendant in a joint trial." *Id.* (citation omitted). Brent has failed to show an abuse of discretion on the part of the trial court.

Christine claims she was incriminated by Brent's statements made during the "securing" process under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) in that the admission of this evidence damaged her on the knowledge issue. In *Bruton,* the United States Supreme Court "held that an *inculpatory statement* as to the defendant, made by a codefendant and related through a third party witness at trial, violates the defendant's Sixth Amendment right to confront his accuser." *Iron Shell v. Leapley,* 503 N.W.2d 868, 870 (S.D.1993) (emphasis added) (citing *Bruton,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476). A review of the statements, however, fails to establish an abuse of discretion on the part of the trial court in denying severance because the statements are not inculpatory.

After Dalziel read Christine her *Miranda* rights, he asked her whether she wished to talk to them at that time.

Christine: "Uh, no."

Dalziel: "Okay. Why don't we call the PD to come down and transport.?"

Brent: "You know, for one thing, anybody can write a letter and send anything to anybody. I could sent you one."

Dalziel: "Yeah, you could."

Brent: "Yeah, you know."

Dalziel: "But you were expecting this one, though, weren't you?"

Brent: "Uh, yeah, we expect our mail all the time."

Dalziel: "Okay. That's good. That'll work."

*Bruton* defines inculpatory statements as "powerfully incriminating extrajudicial statements." *Id.* at 135–36, 88 S.Ct. at 1627–28, 20 L.Ed.2d at 485. Contrary to Christine's claim, she was not incriminated by Brent's statements because they were not "powerfully incriminating." "In the absence of a legal ground, there should be no order for severance." *Andrews,* 393 N.W.2d at 79 (citation omitted). Christine has failed to "demonstrate affirmatively that the joint trial prejudiced the possibility of a fair trial." *Id.* (citations omitted).

**4. Lesser Included Offense Instruction**

Defendants argue that the trial court should have instructed the jury on the lesser included offense of possession of less than one pound of marijuana. According to Defendants, Dalziel's separation of the stalks and stems of the marijuana plant from the leafy portions places the quantity of marijuana into issue.

"There are two tests that must be satisfied in determining whether the trial court should submit a lesser included offense instruction to the jury. The first is a legal test, the second is factual." *State v. Black,* 494 N.W.2d 377, 379 (S.D.1993) (citations omitted), *aff'd,* 506 N.W.2d 738 (S.D.1993). In order to meet the factual test, there must be sufficient evidence which would justify a jury in concluding that the greater offense was not committed and that a lesser offense was. "[T]here must be conflicting evidence with

regard to the element of the greater offense that is not an element of the lesser." *State v. Oien,* 302 N.W.2d 807, 809 (S.D.1981).

The Sioux Falls Police Department chemist testified that the marijuana weighed 1.39 pounds. SDCL 22–42–1(7) defines marijuana as *"all parts* of any plant of the genus cannabis, whether growing or not, in its natural and unaltered state, except for drying or curing and crushing or crumbling." (Emphasis added.) The facts in this case simply do not support the submission of a lesser included offense instruction to the jury. Defendants have failed to demonstrate error. *See Michigan v. Marji,* 180 Mich.App. 525, 447 N.W.2d 835, 838 (1989) (where evidence showed the delivery of 476.92 grams of cocaine, the evidence did not support convictions for delivery of lesser amounts and the trial court did not err in failing to instruct on these offenses).

### 5. Instructions on Failure to Test

■ During the trial, numerous items described as "green leafy substances" were marked as exhibits and placed in full view of the jury. These exhibits were objected to and not received into evidence however, because they had not been chemically tested to determine their substance. Exhibit 8, which contained the two bindles, was also never tested after the controlled delivery but was received into evidence.

Defendants argue that they were entitled to their requested "failure to test" jury instruction because these items were never tested.[4] A review of the record indicates, however, that Defendants, in requesting their proposed jury instruction, did not argue the applicability of the instruction to any exhibits other than Exhibit 8. Therefore, as to any exhibits other than Exhibit 8, Defendants have failed to preserve the record.

As the trial court noted in refusing Defendants' proposed jury instruction, whether Exhibit 8 contained methamphetamine was a question for the jury. The testimony indicated that after testing the substance found in the package and determining that it was methamphetamine, Agent Mennenga placed a small amount of the methamphetamine with inositol. This is not an instance where the State destroyed evidence before it was inventoried or chemically analyzed (spoilation of the evidence). *See State v. Kietzke,* 85 S.D. 502, 186 N.W.2d 551, 558 (1971). (Evidence which is *destroyed before it is* inventoried or *chemically analyzed* (spoilation of the evidence) "creates an inference or presumption that it would not have supported the charges against the defendant.") The bindles were not destroyed, they simply were not tested after delivery. The spoilation doctrine does not apply and the trial court was correct in refusing Defendants' proposed instruction.[5]

We affirm.

MILLER, C.J., and AMUNDSON, J., concur.

WUEST and HENDERSON, JJ., dissent.

WUEST, Justice (dissenting).

### 1. Probable Cause to Search as Affected by Omissions From the Affidavit

Probable cause to search the Johnson residence is affected by material omissions from the affidavit submitted in support of the warrant. *See State v. Brings Plenty,* 459 N.W.2d 390, 401 (S.D.1990). A review of pertinent facts and omissions is in order.

On Saturday, November 9, 1991, law enforcement officials did not have a search warrant for the Johnson's residence in Beresford, nor had they attempted to obtain one. Nevertheless, on November 9, the DCI agents attempted two controlled deliveries of the Express Mail package holding two "doctored" bindles, one containing an unknown amount of the methamphetamine found in the original Express Mail package intercept-

---

4. Defendants' proposed jury instruction provided:
   Failure of the State to preserve or properly test certain evidence, or purposeful concealment by the State of certain evidence, creates an inference or presumption that had the evidence been preserved, tested or introduced at trial, it would

not have supported the charges against the Defendants, but would instead have been favorable to Defendants.

5. This disposes of Christine's argument that her motion for judgment of acquittal should have been granted on the methamphetamine count.

ed via the Citibank mailroom. Both attempts at delivery failed. Dalziel left a notice indicating the package would be delivered shortly before 10:00 a.m. on Tuesday, November 12, 1991. In the interim, a decision was made to obtain a search warrant. On Monday evening, November 11, 1991, Dalziel typed a search warrant for the Beresford residence. At about 8:30 a.m. on Tuesday, November 12, Dalziel went to Magistrate Mary Dell Cody in Vermillion to obtain a signature for the warrant. Dalziel testified that Magistrate Cody said she "would not sign it until after the delivery was made." At 9:50 a.m. on the same day, Dalziel made the third attempt to deliver the Express Mail package to the Johnson residence, did hand it to Christine outside the residence, and immediately arrested her for possession of methamphetamine. Dalziel took the package back from Christine, placed it in the locked trunk of his car, and returned to Vermillion to obtain a search warrant from Magistrate Cody. Dalziel testified that upon his arrival in Vermillion, he "just drove to the court, went in, she signed it, and came back out." Dalziel's affidavit stated that Christine "did receive" the Express Mail package and that it was "delivered to her residence" by the DCI. The affidavit omitted certain facts, *i.e.*, that the package was never opened or taken into the residence by Christine, and that it was presently locked in the trunk of Dalziel's car. Magistrate Cody was not told that Christine had already been arrested and taken to the Beresford police station. Nor was Magistrate Cody told that as Dalziel stood before her, a DCI agent and Beresford police were inside the Johnson home, guarding

Brent and securing the premises due to "exigent circumstances." Basically, the affidavit alleged that because Christine had been sent an Express Mail package containing 2.1 grams of a white, powdery substance consisting of some unknown quantity of methamphetamine, there must be other controlled substances and marijuana in her residence. No facts were contained in the affidavit to show that law enforcement officials possessed other evidence indicative of probable cause that a crime had been committed.[1]

"A search warrant is only valid if probable cause has been shown to the magistrate." *State v. Robinette*, 270 N.W.2d 573, 578 (S.D. 1978).

> Probable cause is generally defined as the existence of facts and circumstances as would warrant an honest belief in the mind of a reasonable, prudent man acting on all the facts and circumstances within the knowledge of the magistrate that the offense has been, or is being committed and that *the property sought exists at the place designated.*

*Id.* at 577.

This court has previously reviewed the existence of probable cause in conjunction with a controlled delivery of a package containing cocaine. *State v. Engel*, 465 N.W.2d 787 (S.D.1991). *See also State v. Baysinger*, 470 N.W.2d 840, 842 (S.D.1991) (detailing the procedure used for a controlled delivery of a package of cocaine). In *Engel*, an anticipatory search warrant was issued, ordering the officers to search not only for the cocaine, but also for other illegal drugs, paraphernalia, or other evidence.[2] 465 N.W.2d at 789.

> The affiant, having learned from other law enforcement officers, experience in controlled mail delivery, believes that the residence will contain other drugs or evidence of other drugs, as well as narcotics paraphernalia, notes and papers that will help identify the sender of the package, possible evidence of other crimes and identities of other drug violators, *as well as the cocaine in the above described package.*

*Engel*, 465 N.W.2d at 789–90 (emphasis added). Such additional information or statements of the affiant were absent from the affidavit in the present case. Further, in *Engel*, the officers were to search for the drugs that were delivered to the residence. In the present case, there was no need to search for the drugs "delivered" to the Johnson residence, since Dalziel knew that the

---

1. The North Dakota Supreme Court has stated that "[I]n view of the special protection given to the home" by the Fourth Amendment to the U.S. Constitution and a similar state constitutional provision, "something additional and more objective than the facile conclusion that contraband is ordinarily kept in the home should be required to establish probable cause to search the home.... [S]uspicion, without anything more specific, does not amount to probable cause to search [a home]." *State v. Mische*, 448 N.W.2d 415, 422 (N.D.1989).

2. The affidavit in *Engel* also contained a paragraph providing the probable cause for the wider search, apart from the controlled delivery. That paragraph stated:

The judge that signed the anticipatory search warrant orally admonished the officer not to execute the warrant until after the package was delivered. *Id.* at 788. An officer made a controlled delivery of a package, dressed as a UPS agent. After waiting thirty minutes, the warrant was executed. This court stated:

> Reading this affidavit in context and looking at the circumstances realistically with a view toward upholding the probable cause determination if possible, it is apparent that once [the defendant] had possession of the cocaine for *half an hour,* officers had probable cause not only to believe that the delivered cocaine was on the premises, but also to believe that the delivery was no mistake and that other items associated with drug use might be found there as well.

*Id.* at 790 (emphasis added). We also noted that, "Probable cause to search the entire premises for other drug-related items cannot be artificially separated from probable cause to search for the cocaine which was the subject of the controlled delivery." *Id.*

The facts of *Engel* are materially distinguishable from the present case. In *Engel,* the delivered package was still on the premises at the time the search warrant was executed. Under the facts presented here, the delivered package was never opened by Christine, was held by her only momentarily, and was taken into and removed from the residence by Dalziel. The package was not on the premises either when the search warrant was obtained, or when it was executed. Since the subject of the controlled delivery was not present on the premises, the probable cause to search the entire premises for other drug-related items must be separated from the probable cause to search for the package—which was safely in Dalziel's trunk.

Whether an omission from an affidavit is material to a finding of probable cause is a mixed question of law and fact and is reviewed *de novo. United States v. Condo,* 782 F.2d 1502, 1506 (9th Cir.1986) (citing *United States v. Ippolito,* 774 F.2d 1482, 1485 (9th Cir.1985)). It is my opinion that the omission of the above-mentioned facts from Dal-

ziel's affidavit casts "doubt on the existence of probable cause." *Brings Plenty,* 459 N.W.2d at 401. Clearly, it was important to the magistrate that the package be delivered and on the premises before a search of the Johnson residence took place. If it were not, she would have signed the warrant when it was first presented to her.

Note should be taken of the statements of the high courts of other states in regard to omissions from affidavits as this affects the existence of probable cause:

> [T]he constitutional protection against warrantless invasions of privacy is endangered by the concealment of relevant facts from the district court issuing the warrant. Warrants issue *ex parte* and the issuing court must rely upon the trustworthiness of the affidavit before it. We believe *the court must have all the pertinent facts before it* in order to determine whether there is sufficient, properly obtained evidence providing probable cause for a warrant to issue. Police and prosecutors *owe a duty of candor* to the court, particularly in light of the *ex parte* nature of these proceedings, and *must not withhold information which may taint the source of the probable cause they put forth.*

*Cruse v. Alaska,* 584 P.2d 1141, 1146 (Alaska 1978) (citations omitted) (emphasis added). Likewise, the Colorado Supreme Court stated:

> [T]he fact that an officer-affiant's statements in a warrant affidavit are not false does not necessarily end judicial scrutiny of the contents of the affidavit.... Because the decision of a judicial officer asked to issue a warrant is the cornerstone of our constitutional protections against unlawful governmental invasions of privacy, *it is of paramount importance that the decision be based on a complete factual predicate.* Probable cause determinations are invariably based on *inferences drawn from the language* appearing in warrant affidavits.... It has, therefore, been recognized that in some circumstances statements of officer-affiants may be so misleading because of the omission of material

Express Mail package was in the trunk of his car.

Magistrate Cody was without that knowledge.

facts known to the affiant at the time the affidavit was executed that a finding of probable cause based on such statements may be deemed erroneous.

*Colorado v. Winden*, 689 P.2d 578, 582–83 (Colo.1984) (citations omitted) (emphasis added). *See also California v. Kurland*, 28 Cal.3d 376, 168 Cal.Rptr. 667, 671–72, 618 P.2d 213, 217–18 (1980) (stating that the "crucial, inference-drawing powers of the magistrate" are hindered as much by omissions as by outright misstatements in an affidavit).

The affidavit presented to the magistrate in this case withheld the fact that the package was no longer on the premises. The magistrate, when told that the package had been "delivered," could reasonably infer from that language that the package was on the premises. In light of her earlier refusal to sign the warrant, it is likely that is exactly what she did infer. Complete candor on the part of law enforcement officials would direct that the magistrate should have been provided with the whole set of facts regarding the morning's events. The omission of these facts from the affidavit affects the finding of probable cause to search the residence. For this reason, I dissent on the probable cause determination.

## 2. Securing the Premises—"Exigent Circumstances"

The majority opinion quotes language in support of the proposition that the securing of the Johnson residence by officers, while waiting for a search warrant, was legal. *Segura v. U.S.*, 468 U.S. 796, 810, 812, 104 S.Ct. 3380, 3388–89, 82 L.Ed.2d 599, 612–13 (1984). In fact, this language was not a part of the majority holding of *Segura*. Part IV of the opinion, from which these quotations are taken, was written by Chief Justice Burger, and only Justice O'Connor joined this writing. Thus, this is not persuasive authority for the legality of securing the premises in this instance. *See also State v. Habbena*, 372 N.W.2d 450, 455 (S.D.1985) ("We find the decision to be of little precedental [sic] value.")

Although the police did not proceed with a warrantless search, the warrantless entry and securing of the premises is nearly as repugnant.

> [T]he mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment. The investigation of crime would always be simplified if warrants were unnecessary. But the Fourth Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law.

*Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290, 301 (1978). The Supreme Court has also stated that, "The Fourth Amendment is designed to prevent, not simply to redress, unlawful police action." *Chimel v. California*, 395 U.S. 752, 766 n. 12, 89 S.Ct. 2034, 2042 n. 12, 23 L.Ed.2d 685, 696 n. 12 (1969).

In any event, no "exigent circumstances" existed in this case. The Express Mail package—which the magistrate reasonably contemplated would be the focus of the search—was safely locked in the trunk of Dalziel's car. In regard to exigent circumstances, this court has noted that the fact that "there may be some delay or inconvenience in getting a search warrant is not a valid reason for averting the constitutional requirements." *State v. Heumiller*, 317 N.W.2d 126, 129 (S.D.1982). And, as stated by an Iowa appeals court, when "the creation of [the] exigency was the officer's announcement to. the [defendant] that he wished to search … the appropriate rule to be applied in such a situation is that the State may not profit by an officer's choice to forego the constitutional process by attempting to create an exigency by his own actions." *Latham v. Sullivan*, 295 N.W.2d 472, 478 (Iowa App.1980).

Rather than attempt to follow an accepted procedure for a controlled delivery as outlined in *Engel*, 465 N.W.2d 787, the officers in the present case chose to follow a different course. The State should not profit from that choice by pleading exigent circumstances—where none existed—to justify the illegal securing of the Johnson residence. Thus, I dissent from the majority opinion's

determination that the securing of the premises was legal.

Additionally, I agree with Justice Henderson's writing on the issue of joinder. Under these facts, separate trials should have been granted to these defendants.

HENDERSON, Justice (dissenting).

These convictions should be reversed and the cases remanded for new jury trials for this reason: Prejudicial effect of the joinder of both defendants in a single trial. *State v. Dixon*, 419 N.W.2d 699 (S.D.1988). Both defendants made timely motions for severance. SDCL 23A–8–3.

Neither defendant testified. Neither (therefore) were able to confront and cross-examine each other. Out of court statements, made by either defendant, were hearsay evidence and admissible only against the declarant. *State v. Best*, 76 S.D. 220, 75 N.W.2d 913 (1956).

Two days of jury trial are reflected by the record with 48 exhibits offered by the State of South Dakota.\* Twelve pertained to the marijuana charge. Only eight of these twelve were admitted. Perforce, the lion's share of the evidence pertained to Possession of a Controlled Substance charge lodged against Christine Johnson. Thereby, Brent Johnson's rights to a fundamentally fair trial were devoured. The underlying purpose of the judicial system is justice—not efficiency. Here, two trials were crowded into one trial. In *State v. Andrews*, 393 N.W.2d 76 (S.D. 1986), cited by the majority opinion, there were common charges. Not true in this case. Brent Johnson was not charged, as was his wife, with Possession of a Controlled Schedule II Substance, namely methamphetamine.

A scalpel is a sharp instrument which can cleave flesh in one stroke. And cleanly. Not so with evidence in a criminal case. A juror's mind is not a scalpel; it cannot finely excise evidence. Where complicated exhibits and evidence are produced in one trial, requiring frequent admonitions of a trial judge that this evidence pertains to one defendant and not to the other defendant, a juror's

mind does not have the capacity "... to keep, separate, collate and appraise evidence relevant to each Defendant." *See Andrews*, 393 N.W.2d at 79. Recall the number of exhibits and witnesses in this "simple" trial. Counsel for Brent Johnson raised objection to 36 exhibits introduced by South Dakota to the methamphetamine charge; trial court admonished on the first three objections but not the other 33.

Another two-day trial—would it have been so time consuming, expensive, or duplicitous? Surely not. Here, the marijuana charge involved just three witnesses and four exhibits. Brent Johnson was engulfed in an avalanche of methamphetamine evidence. My viewpoint is supported by a quote in *Dixon*, 419 N.W.2d at 702, which refers to 1 Wright, Federal Practice and Procedure, *Joinder of Offenses & Defendants* § 143 (1982), which I quote "... a trend is developing that 'the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense, ...'" Applying that statement of law to this set of facts, the answer is NO.

Lastly, the admission of Brent Johnson's statements against both of these defendants violated Christine Johnson's right to confrontation. We have, before us, a violation of what has become known as the *Bruton Rule*. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Iron Shell v. Leapley*, 503 N.W.2d 868, 872 (S.D. 1993), a unanimous opinion handed down by this Court on August 11, 1993 (just 4 months ago), Justice Amundson wrote for this Court:

> Since the Confrontation Clause's purpose is to assist a defendant in receiving a fair although not perfect trial, this pollution certainly undermines the reliability of the result in this prosecution and is prejudicial to Iron Shell. *Adams v. Leapley*, 489 N.W.2d 381 (S.D.1992).

These statements *contributed* to a criminal conviction. There was no harmless error. It was prejudicial error. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Accord Yates v. Evatt*, 500 U.S. 391,

---

\* State called 11 witnesses. It attempts to portray this as a simple trial. It was not.

——, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991).

### The Phony Postman

Additionally, a reversal is warranted to remedy the effects of the alleged possession of methamphetamine by Christine and search of her home.

One morning, Christine Johnson was standing outside her mobile home when a United States postal employee approached her. After asking for her name, he handed Christine an Express Mail package addressed to her. She accepted and signed for the special delivery, a task familiar to most people. What happened next is not so typical. Standing in front of her home holding a sealed, unopened piece of mail fresh from the postman's hands, Christine suddenly heard the words: "You're under arrest."

After expressing her disbelief, the postman, a/k/a undercover DCI agent Dalziel, remarked, " 'Cause you know what's inside there." He took the still unopened package from her without revealing "what's inside there." Following Christine so she could inform her husband of the arrest, Dalziel carried the package inside the house. Inside, neither Christine nor her husband touched the package. After two other agents arrived to secure the premises, Dalziel departed, placed the package in his trunk, and obtained a search warrant for the house based upon Christine's *possession of methamphetamine* in her home. This is remarkable. No such possession occurred. Only law enforcement agent Dalziel possessed the drug package within the Johnson home. In fact, Christine did not pick up drugs even when she stood outside her home that day. *She picked up her mail!*

In *State v. Engel,* 465 N.W.2d 787 (S.D. 1991), Engel accepted a package from an undercover drug enforcement agency officer posing as a UPS deliveryman and took it inside. The package, containing cocaine, remained in Engel's home for thirty minutes before law enforcement officers took action on Engel's possession. We upheld the arrest and warrant stating:

> [O]nce Engel had possession for half an hour, officers had probable cause not only to believe that the delivered cocaine was on the premises, but also to believe that the delivery was no mistake and that other items associated with drug use might be found there as well.

*Engel,* 465 N.W.2d at 790. DCI adhered to this procedure in *State v. Baysinger,* 470 N.W.2d 840 (S.D.1991). After a DCI agent was unable to make a UPS delivery, he left a note instructing the addressee to pick up the package at the UPS office. Later, the defendant did so and returned home. Thereafter, a search warrant request was made and executed before law enforcement officials.

Dalziel put the cart before the horse. He intuitively knew an illegal activity had occurred, but blew his cover before he had the evidence. I do not propose that Christine Johnson be exonerated from a crime due to a technicality; rather I wish to protect citizens of this Republic from facing prosecution for merely accepting mail from the U.S. Postal Service. In both *Engel* and *Baysinger,* the defendant had physical possession of the contraband within his home and had sufficient time to check the packages' contents and act on a mistaken delivery. Christine held for a few moments a cardboard envelope decorated with the U.S. mail logo of one of this country's great symbols: the bald eagle. At no time did the State establish that she had knowledge of this misuse of our mail system. Frankly, the employee at Citibank who first mistakenly opened the package and discovered the drugs demonstrated more constructive possession than Christine. Her possession is clearly against the weight of the evidence. *State v. Brings Plenty,* 459 N.W.2d 390, 399 (S.D.1990).

The controlled substance was in the house under Dalziel's controlled possession. Christine held the Express Mail for only a few seconds and never acknowledged so much as an "I've been expecting this" remark. In order for the warrant to properly issue, some evidence of constructive possession should exist. Dalziel skipped that detail. Because the trial court's decision was "exercised to an end or purpose not justified by, and clearly against, reason and evidence," *State v. Fly-*

*ing Horse,* 455 N.W.2d 605, 608 (S.D.1990), it abused its discretion.

